**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RENEE E. GLADLE,**

                               **Plaintiff,**

    vs.                                                     **7:05-CV-797**
                                                                **(NAM/GJD)**

**MICHAEL J. ASTRUE,**[1]
**COMMISSIONER OF SOCIAL SECURITY,**

                                 **Defendant.**
_____

APPEARANCES:                                      OF COUNSEL:

Conboy, McKay, Bachman & Kendall, LLP      Lawrence D. Hasseler, Esq.
407 Sherman Street
Watertown, New York 13601
*Attorneys for Plaintiff*

Glenn T. Suddaby                                William H. Pease, Esq.
United States Attorney for
the Northern District of New York
P.O. Box 7198-
100 South Clinton Street
Syracuse, New York 13261-7198
and
Office of General Counsel                         Barbara L. Spivak, Esq.
Social Security Administration                   Kristina Cohn, Esq.
26 Federal Plaza
New York, New York 10278
*Attorneys for Defendant*

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in this action.

**I.      INTRODUCTION**

Plaintiff Renee E. Gladle brings the above-captioned action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny her application for disability insurance benefits ("DIB").  Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**II.     BACKGROUND**

Plaintiff was 54 years old at the time of the administrative hearing on December 15, 2004.  (Administrative Transcript at p. 69).[2]  She completed high school and a vocational course in cosmetology.  (T. 248).  She has past relevant work as a circuit board tester, assembler, and solder technician.  (T. 19, 248-49).  Plaintiff alleges disability due to degenerative disc disease, spinal stenosis and depression.

**A**.     **Plaintiff's Medical Treatment**

    **1.      Treating Physicians and Diagnostic Imaging**

An MRI of Plaintiff's lumbar spine, dated November 14, 2000, revealed degenerative changes of the facet joints and some posterolateral spurring at all levels, more severe at L5-S1 where there was a large posterior disc bulge with indentation of the thecal sac and secondary spinal stenosis.  (T. 132).  An MRI of the cervical spine, dated May 13, 2003, showed a mild posterior osteophytes disc complex at C5-6 with indentation of the thecal sac but no spinal stenosis.  *Id.* at 142.

Plaintiff treated with Dr. Stanley Gryzb from approximately March 25, 2003 through May

---

[2] Portions of the administrative transcript, Dkt. No. 4, filed by the Commissioner, will be cited herein as "(T. __)."

30, 2003. *Id.* at 135-40. On March 25, 2003, Dr. Gryzb reported a negative straight leg raising test, normal gait and heel-toe walk, and intact reflexes. *Id.* at 135. Dr. Gryzb opined that the clinical examination "fail[ed] to reveal any evidence of a lumbar radiculopathy with intact motor, sensory, and reflexes." *Id.* Dr. Gryzb recommended conservative treatment. *Id.* at 137.

Plaintiff saw Dr. Jerry Tarver for pain management and underwent a radiofrequency ablation on June 30, 2003. *Id.* at 161-62. After reporting that this procedure did not help with her pain, she underwent epidural steroid injections on November 12, 2003, and January 16, 2004. *Id.* at 163-66. Following the first injection, Plaintiff reported that she received one and a half months of "excellent relief" from pain. *Id.* at 165. On November 12, 2003 and January 16, 2004, Plaintiff had normal motor examinations and negative straight leg raising tests. *Id.* at 163-66.

Dr. Chris Comeau treated Plaintiff from January 20, 2004 through December 3, 2004. (T. 174-214). Plaintiff primarily complained of chronic low back pain, dyspepsia, and occasional problems with depression. *Id.* at 174, 178, 180, 183, 186, 189, 192, 201. Dr. Comeau's treatment notes upon objective physical examinations document full ranges of motion in the neck and cervical spine, normal gait, normal sensory and motor examinations, and full strength. *Id.* at 175, 179, 182, 184, 187, 190, 194, 196, 199, 203, 206, 211.

Dr. Comeau provided a medical source statement dated December 10, 2004, which found that Plaintiff could occasionally lift and/or carry less than ten pounds; could stand, walk, and/or sit for less than two hours each in an eight-hour workday and must periodically alternate between sitting and standing; had limitations in the upper and lower extremities; could occasionally climb, balance, kneel, and crouch, and never crawl or stoop; could occasionally reach; and should not be exposed to noise, humidity and wetness, hazards such as machinery or heights, vibration, and

3

temperature extremes. *Id.* at 228-32. Dr. Comeau stated that Plaintiff experienced cervical spine pain, neck pain, and numbness, which caused her limitations. *Id.*

Dr. Comeau also filled out a multiple-choice questionnaire which indicated that Plaintiff's pain was distracting to adequate performance of daily activities or work, that physical activity greatly increased her pain causing abandonment of tasks related to daily activities or work, and that medication impacted her ability to do work such that she would be restricted from the workplace and unable to function at a productive level. *Id.* at 233.

### 2. Consultative Physicians

Dr. Abdul Latif performed consultative neurological examinations on July 15, 2003, September 3, 2003, and March 2, 2004. *Id.* at 168-73. On July 15, 2003, Dr. Latif noted that Plaintiff was not in any discomfort, had no tenderness of the cervical spine or shoulder muscles, motor examination showed no weakness of the upper or lower extremities, muscle tone was normal, and gait was normal. *Id.* at 168-69. On September 3, 2003, Plaintiff had no tenderness of the cervical spine or shoulders, normal motor examination and sensation to pin prick, symmetrical reflexes, and normal gait. *Id.* at 170. On March 2, 2004, Dr. Latif reported mild tenderness on the right side of neck and shoulder, normal motor examination, symmetrical reflexes, and normal gait. *Id.*

A physical residual functional capacity ("RFC") assessment was completed by a state agency physician on July 10, 2003. *Id.* at 149-54. This assessment found that Plaintiff retained the ability to lift and/or carry twenty pounds occasionally and ten pounds frequently; sit, stand, and/or walk for about six hours each in an eight-hour workday; and push and/or pull to the extent indicated by her lifting and carrying restrictions. *Id.* at 150. Plaintiff was found unable to climb

ramps or stairs and to occasionally balance, stoop, kneel, crouch, and crawl. *Id.* at 151. No manipulative, visual, communicative, or environmental limitations were found. *Id.* at 151-52.

### III.  PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 2, 2003. (T. 49-51). The application was denied on July 15, 2003. (T. 29-32). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 15, 2004. (T. 36-38, 242-65). On January 28, 2005, Administrative Law Judge ("ALJ") Robert E. Gale issued a decision denying plaintiff's claim for disability benefits. (T. 18-27). The Appeals Council denied plaintiff's request for review on June 3, 2005, making the ALJ's decision the final determination of the Commissioner. (T. 8-10). This action followed.

### IV.  ADMINISTRATIVE LAW JUDGE'S DECISION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

In this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 19). At step two, the ALJ concluded that Plaintiff suffered from degenerative disc disease, spinal stenosis, and depression, which qualified as "severe" impairments within the meaning of the Social Security Regulations (the "Regulations"). *Id.* at 20. At the third step of the analysis, the ALJ determined that Plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. *Id.* at 21. At the fourth step, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [The claimant retains the RFC] to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand 15 minutes at a time for a total of two hours in an eight-hour work day, walk 30 minutes at a time for a total of two hours in an eight-hour work day and sit 30 minutes at a time for a total of six hours in an eight-hour work day. She cannot climb ladders or scaffolds but can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs and is able to perform simple one and two step tasks.

*Id.* at 24.

The ALJ described this RFC assessment as an ability to perform "substantially all of the requirements of light work." *Id.* at 25.

At step five, the ALJ concluded that Plaintiff could not perform her past relevant work. *Id.* at 24. However, the ALJ decided that Plaintiff could perform other work existing in significant numbers in the national economy. *Id.* He based this decision on Medical-Vocational Guidelines, specifically Rules 202.13, 202.14, and 202.15. *Id.* at 25. The ALJ did not elicit vocational expert testimony in this case. Based on his consultation of the Medical-Vocational

6

Guidelines, or "grids," the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time through the date of his decision. *Id.*

## V.  DISCUSSION

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Plaintiff argues that: (1) the ALJ failed to properly apply the treating physician rule; (2) the ALJ's RFC assessment was improper; (3) the ALJ's credibility evaluation was erroneous; and (4) the ALJ erred in using the Medical-Vocational Guidelines and should have obtained the testimony of a vocational expert ("VE").

### A.  Treating Physician Rule

Plaintiff argues that the ALJ failed to properly follow the treating physician rule when he did not assign controlling weight to Dr. Chris Comeau's medical source statement dated December 10, 2004. (Pl.'s Br. at 13-17; *see* T. 228-33). Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). As already noted, an ALJ may not arbitrarily substitute his own judgment for a competent medical opinion. *Rosa*, 168 F.3d at 79. Thus, if the treating physician's opinion is not given

7

controlling weight, the ALJ must assess several factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'"  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions."  *Snell*, 177 F.3d at 133.  Thus, a treating physician's disability assessment is not determinative.  *Id.* Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Dr. Comeau, Plaintiff's treating physician, provided a medical source statement of ability to do work-related activities (physical) on December 10, 2004.  (T. 228-33).  As noted above, in this statement Dr. Comeau opined that Plaintiff could occasionally lift and/or carry less than ten pounds; stand, walk, and/or sit for less than two hours each in an eight-hour workday and must periodically alternate between sitting and standing; had limitations in the upper and lower extremities; could occasionally climb, balance, kneel, and crouch, and never crawl or stoop; could occasionally reach; and should not be exposed to noise, humidity and wetness, hazards such as

machinery or heights, vibration, and temperature extremes. *Id.* at 228-32. Dr. Comeau stated that Plaintiff experienced cervical spine pain, neck pain, and numbness, which caused her limitations. *Id.* Dr. Comeau also filled out a multiple-choice questionnaire which indicated that Plaintiff's pain was distracting to adequate performance of daily activities or work, physical activity greatly increased her pain causing abandonment of tasks related to daily activities or work, and that medication impacted her ability to do work such that she would be restricted from the workplace and unable to function at a productive level. *Id.* at 233.

The ALJ's decision not to afford controlling weight to Dr. Comeau's opinion is supported by substantial evidence. First, Dr. Comeau's opinion is inconsistent with his own treatment notes. Dr. Comeau's treatment notes consistently document full ranges of motion in the neck and cervical spine, normal gait, normal sensory and motor examinations, and full strength. *Id.* at 175, 179, 182, 184, 187, 190, 194, 196, 199, 203, 206, 211. Second, Dr. Comeau's opinion is inconsistent with the medical record as a whole. MRIs taken of Plaintiff's cervical spine revealed only a small disc protrusion at the T11-12 level without spinal cord compression, a disc bulge at the L3-4 level with very minimal thecal sac compression, mild stenosis at the L4-5 level, and disc bulging at the L5-S1 level with minimal thecal sac compression. *Id.* at 134. Dr. Gryzb, who performed a consultative examination, reported a negative straight leg raising ("SLR") test, normal reflexes, normal sensory and motor examinations, intact neurological results, and full range of motion of the cervical spine. *Id.* at 135-36, 138. Dr. Tarver, another consultative examiner, found normal bilateral rotation, negative SLR test, full muscle strength, normal reflexes, and normal sensory findings in the lower extremities. *Id.* at 144, 161, 163, 165, 266. Dr. Williams reported normal nerve, motor, and sensory function, as well as normal gait, reflexes,

9

and coordination. *Id.* at 148. Thus, the objective medical findings support the ALJ's ultimate conclusion that Dr. Comeau's opinion was inconsistent with his own treatment notes as well as the medical record as a whole. For the foregoing reasons, the Court finds that the ALJ's decision to accord less than controlling weight to Dr. Comeau's opinion was both properly explained and supported by substantial evidence.

**B.     Residual Functional Capacity**

Plaintiff argues that the ALJ failed to properly assess her residual functional capacity ("RFC"). (Pl.'s Br. at 17-19). Plaintiff bases this argument solely on the contention that because the ALJ improperly afforded less than controlling weight to Dr. Comeau's opinion, the ALJ therefore erred not incorporating this opinion into his RFC determination. *Id.* Because the Court has already determined that the ALJ's weighting of Dr. Comeau's opinion was proper, the Court rejects Plaintiff's argument in this regard.

**C.     Credibility**

Plaintiff argues that the ALJ applied an incorrect legal standard and erroneously determined that Plaintiff's statements regarding her impairments were not entirely credible. (Pl.'s Br. at 14-16). It is well settled that "a claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence". *Simmons v. U.S. R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) . The ALJ retains discretion to assess the credibility of a

10

claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence. *See* SSR 96-7p, 1996 WL 374186, at *2.

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Martone v. Apfel*, 70 F. Supp.2d 145, 151 (N.D.N.Y. 1999); *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 220 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987)) (citations omitted). It is insufficient for an ALJ to make a conclusory statement that "the

11

individual's allegations have been considered" or that "the allegations are (or are not) credible". SSR 96-7p, 1996 WL 374186, at *4 (SSA July 2, 1996). Absent such findings, a remand is required. *Miller v. Shalala*, 894 F. Supp. 73, 75 (N.D.N.Y. 1995); *see also Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("a finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand").

In this case, the ALJ found that Plaintiff's subjective complaints of pain were not fully credible. (Tr. 24). The ALJ acknowledged that Plaintiff suffered from impairments which could be expected to produce some of the symptoms alleged, but concluded that Plaintiff's full allegations of pain were not credible because they were not consistent with the objective medical evidence as well as Plaintiff's testimony as to her daily activities. *Id.* As the ALJ noted, Plaintiff testified that she is able to do light housework, dishes, and cooking, shop with her husband, drive, care for her personal needs, go to church, watch television, and read. *Id.* at 255-59. Further, the ALJ pointed to objective medical evidence which indicated that although Plaintiff intermittently reported tenderness to palpation of the spine, she had consistently normal physical examinations which found normal gait, full ranges of motion, and full strength. *See id.* at 134-36, 144, 148, 161, 163, 165, 175, 179, 182, 184, 187, 190, 194, 196, 199, 203, 206, 211, 266. Given the evidence in the record as well as the ALJ's explanation for his credibility determination, the Court finds that this determination was proper and supported by substantial evidence.

**D.     Vocational Expert Testimony and the Medical-Vocational Guidelines**

Plaintiff next argues that the ALJ erred in failing to elicit vocational expert testimony in this case, and instead relying exclusively on the Medical-Vocational Guidelines, or "grids." (Pl.'s Br. at 22-24). Ordinarily, the Commissioner can meet his burden in connection with the fifth step

of the relevant disability test by utilizing the grids. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). The grids take into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy. *Rosa*, 168 F.3d at 78. Whether or not the grids should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved. *Bapp*, 802 F.2d at 605. If a plaintiff's situation fits well within a particular classification, then resort to the grids is appropriate. *Id.* If, on the other hand, nonexertional impairments, including pain, significantly limit the range of work permitted by exertional limitations, then use of the grids is inappropriate, in which case further evidence and/or testimony is required.[3] *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06. In such cases, the ALJ may rely on the grids only as a framework for decision-making. 20 C.F.R. § 416.969a(d). Nonexertional limitations include postural limitations such as limitations in climbing, reaching, stooping, crawling, balancing, and kneeling. *Id.* § 416.969a(c).

>As noted above, the ALJ in this case found that Plaintiff retained the following RFC:

>>to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand 15 minutes at a time for a total of two hours in an eight-hour work day, walk 30 minutes at a time for a total of two hours in an eight-hour work day and sit 30 minutes at a time for a total of six hours in an eight-hour work day. She cannot climb ladders or scaffolds but can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs and is able to perform simple one and two step tasks.

---

[3] As one court has explained,

>[a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

T. 24. Plaintiff's restrictions in climbing, balancing, stooping, kneeling, crouching, crawling, and climbing, and her limitation to performing only simple tasks constitute significant nonexertional limitations. *See* 20 C.F.R. § 416.969a. As such, the ALJ should have obtained additional evidence such as the testimony of a vocational expert in order to accurately determine Plaintiff's ability to perform other work existing in significant numbers in the national economy. The case is thus remanded for this purpose.

## VI. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED** that the decision denying disability benefits is **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 § U.S.C. 405(g) for consideration of other evidence and/or vocational expert testimony on the issue of the impact of Plaintiff's nonexertional impairments on her ability to perform other work existing in significant numbers in the national economy; and for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: September 23, 2008
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge